14-1668 TNS Media Research, LLC v. TiVo Research And Analytics Mr. Goldberg, when you're ready. Good morning, and may I please report? Thank you for indulging my cap, which I need for the glare. The Supreme Court last year took the step of deciding an opinion regarding an affirmance of summary judgment and reiterated the fundamental bedrock principle that a judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter, but to determine whether there's a genuine issue for trial. That was in the Tolan v. Cotton case. This principle cuts across all the issues in this appeal. TRA is appealing from the district court's summary judgment against TRA on all of TRA's claims. Let me ask you about the stipulation as it relates to the purchase data. What did you understand the stipulation to mean when you entered into that stipulation? There was absolutely no suggestion at the time that that would be a basis for non-infringement, and to the contrary, at every moment up until that stipulation, it had been the position of Kantar that their products satisfied the purchase data limitation. It was an unbelievable gotcha when they took the position that the stipulated construction meant that their products did not infringe. Well, didn't you question why you were putting that language into the stipulation when the language doesn't appear in the claim anywhere? The language, frankly, seemed innocuous. It was also entered into by my predecessor counsel. But that language, in terms of what the purchase data meant, data about when a particular product is purchased and that it's purchased at a given time, that language, as you say, is not in the claim, and for that language to now be further construed to mean anything specific as to the time element is contrary to what's set forth in the patent. Did your predecessor counsel ever argue to the district court that the district court shouldn't be construing stipulated language, that the district court should attempt to determine what the meeting of the minds was as it relates to that stipulation? At the time of the stipulation, there was not discussion about it. It was the party stipulated to it, and then when Kantar moved for summary judgment of non-infringement, what they said was their product discloses nothing whatsoever about time. In other words, they said their product does not even tell you what quarter a purchase was made. And so what they said at summary judgment was they weren't arguing that a given time means you have to know the precise date. What they were saying was even if a quarter would be a given time, they don't infringe because their product doesn't tell you the quarter. We submitted a mountain of evidence to show that their products disclosed the quarter, at a minimum, the quarter in which a purchase was made. And so the issue that was presented to the district court was whether their product discloses quarterly data. They say it doesn't. We say it does. When you believe the district court surprised you by construing this stipulated language to have a very specific meaning, did you go back to the district court and say, Judge, you can't do that without having a Markman hearing or without making a determination as to what the parties understood the stipulation to mean? When I said there was a gotcha, I didn't mean that we were surprised by what the district court said. And the district court did not say you have to know the precise date. The district court agreed with Kantar. Why shouldn't we interpret the district court to have said that? I'm sorry? Why shouldn't we interpret the district court to have said that? The order says that Kantar's products disclose nothing at all about the time. But it also had a very clear statement about what she understood the time frame within these patents to be, which was a very tight time frame, right? Like the very point in time. To the extent that that's what the court decided, that was not my understanding. My understanding is that it was based on what Kantar argued, which was that the products disclosed nothing at all about time. Where you're at now is we've come down to a claim construction issue. Right. Because let's assume that I construed the claim and I agree with your adversary that there is a temporal requirement in the claims, which is the first question. And then I decided, well, and they're right. The purchase data has to be exactly specific to a single purchase transaction date and event. If that's the case, then the summary judgment was properly entered. Your Honor. So how do I decide this problem of claim construction? There hasn't been a Markman hearing. The parties haven't briefed back and forth what the patent tells us about the temporal restriction. You argued before in the summary judgment that the patents defined purchase-wise data can inquire yada, yada, yada, meaning that it would be broad enough to include court dates. But there hasn't been an adjudication in the claim construction issue. Your Honor, the claim construction of purchase data was stipulated. And so the issue about what that construction... Well, why does the claim construction of purchase data is circular? Because it brings in the temporal limitation that talks about at a given time. And there's a massive disagreement between what a given time is. Right. So I guess I have two comments I'd like to make about that. One of them is, when you have a construction, my understanding is that once the claim has been construed, the issue of whether the product falls within that limitation is something for the jury. But we just went through a minute ago. If the claim construction proves that purchase data is limited to a specific transaction, a specific date, and a specific product, then you lose summary judgment. Right. So the claim construction issue drives the bottom line result on the non-automotive product. And my question is, how do I know? For example, can you point to me in the patent the language that convinces me that quarterly data is sufficient for purposes of a temporal restriction? Can you? Great. The best I can find in the patent, I'll tell you after you tell me what it is. Where is the definition of purchase data that will include quarterly data? I'm looking at the 940, but you can look at any one. There are three patents, and they're essentially the same in terms of specification. I guess the point I'm trying to make, Your Honor, and I will try to address your question. On our opening brief on page 23, footnote 5, I think really cuts to the heart of it. And I would urge the court to look at that particular footnote.  I agree, it's a challenging issue. It's nested claim constructions, and there's construction of the construction, and it gets very messy. We come into issues about notice and waiver. What was the argument that Kantar was putting forward? And as we explained in footnote— What was your whole argument that they conceded this earlier and they changed their mind? Throw that at us. Well, that's our judicial estoppel argument, which is different. But I come back to the problem, which is I don't know. Having spent quite a lot of time on this, I think there probably is a temporal requirement with regard to purchase data. Just generally speaking, there has to be some relationship of time to a purchase to make this whole patent make any sense. But what I'm trying then to decide is what is the nature of the temporal requirement? Is it anything having to do with time, quarterly, semi-annually, or is it more specific? It's a claim construction issue. Do you agree with me that it's a claim construction issue? With respect, Your Honor, I don't. For the reason that we fight to the PPG case in footnote 5. And what's that trying to tell us? And we quote that, and we say, The task of determining whether the construed claim— But here's the problem. When a court is reconstruing its own language, that's one thing. But you've got extraneous language that you all stipulated into the claim, and how does the court determine, without reference to the patent and without a Markman hearing, what those stipulated words mean? So it's a very different situation when you cite these cases where we said, Okay, a court's got its own construction, and then later the court says, What's the scope of that construction? That's different than trying to figure out what a stipulation meant without ever any inquiry until if the parties understood their meeting of the minds to be. I think you're right, Your Honor. All ambiguities are supposed to be resolved in favor of the non-moving party. And so it was the burden of Kantar to prove that there are no disputed issues of material fact regarding non-infringement. And they told us— That depends on what the claim construction is. So in other words, is your argument that all they ever argued was they don't consider time at all? And since there's evidence that they at least consider time on a quarterly basis, some are judging it's not appropriate. But even if that's true, what goes to the jury? I mean, doesn't there have to be some assessment of what timeframes are contemplated by the patent? Because maybe they'll come back and say, Okay, all right, we'll concede that we consider it on a quarterly basis, but we don't have tight timeframes like the patent contemplates. Right. If the court were to construe the patent as requiring that you need to know the exact date, that would be one situation. We don't think that's what the patent says. We don't think that's what the stipulation says. So if that were the case, some judgment would be correct. Case shouldn't go to the jury. As to literal infringement. Let's stick with literal for the moment. We're hung up with this. So if the case went back and went to the jury on the claim construction we have now, the judge is going to have to charge the jury as to what had a given time means, whether it means to a specific date in time or whether it can be more generous and includes a quarterly time. Because the two of you very much disagree on that point of claim construction. So the jury has to be told one way or the other. Do you agree? With respect, Your Honor, I don't know that the court would or should construe the stipulated construction. So if the court were to do that, we would have argument about how the jury should be instructed. We haven't had to do that given the way that all the arguments have come out. If there had been a Markman here, if there had been a Markman here and this discussion had been going on in front of the district court, the district court I'm certain would have leaned over and said, well, I know that you all want to say that at a given time defines purchase data, but why don't you tell me why I picked one between the two of you about whether or not it's a precise point in time or whether it can be a general point in time. Right. And then you two of you would then retreat back into the specification, right? And you would hunt for information that supported either of your points of view. And the judge would then decide. And the dispute would be over. Isn't the answer to this discussion, this is unsummary judgment. If it went back, there would be a Markman hearing. There would be a trial. There'd be jury instructions. Am I missing the point of our trial discussion? You're suggesting that there's no necessity for a Markman hearing because you've already construed the claims yourself. I think there is a reasonable argument on both sides, and I think it would be reasonable either way. The precedent I was referring the court to would suggest that once there's a construction, now you leave it to the jury, even if there's some ambiguity in the construction. But I also think it would be very reasonable to have some further argument on this and let the court decide so you don't get confusion. Is there an issue with the fact that even if CANTAR ultimately has to have a time component, because otherwise you can't measure frequency, I mean, you have to have some sense of what time frame you're working in to determine frequency, is there a problem that they don't actually collect that data? That someone else collects the data? I don't think so. I don't think that that matters. They receive the data. They have that information. The whole purpose of their product is to match up the information about what people were watching with what people were buying. And they do this and... But do they perform the steps in the claim or does somebody else perform it? They perform those steps. Your Honor, a point of clarification, my time is down to two seconds. I'm not sure if that's my first ten minutes or... Do answer the question and we'll restore your rebuttal time. Proceed. Thank you. I would like to make sure I'm addressing all the court's questions about purchase data, but this also is a case that involves many claims. We have, of course, the three patents that are in the case involving literal infringement  There are also five different groups of trade secrets. There are four separate contracts that were breached, and those breaches have to be presumed on summary judgment because the other side, Kantar, did not move for summary judgment as to liability. We also have to do shared duty. Let's hear from the other side on this question of summary judgment. We'll see if we need to get into the other issues. Okay. Thank you very much. Okay. Mr. Goldberg. Mr. Goldberg. Good morning, Your Honor, and may it please the Court. Your Honor, the patent distinguishes between two types of concepts that TRA is trying to conflate, and I think that's what underlies the problem here. The patent, on the one hand, refers to what's called user type. User type is whether someone is a light, medium, or heavy purchaser of a particular product, segment, or brand, like yogurt or Dannon yogurt. But how do you know if someone's a heavy? I mean, I may buy 20 yogurts. If that's over the course of two years, that's not a heavy user. Exactly. Over the course of one week, it is. Precisely, Your Honor, and that's why, as we indicated in our briefing, and there was no dispute about this below, that has to be measured over a window of time. Now, TRA is trying to argue that user type, which is this question of whether you're a light, medium, or heavy purchaser over a window, like a quarter, they're trying to argue that that's the same as purchase data, and there are two problems with that. First is that they've stipulated to a construction of purchase data, and I'll come back to that one in a minute. There's a fundamental problem, though, that even if they somehow were to prevail on that, still doesn't show infringement. They stipulate it at a given time, and then you will totally disagree as to what that stipulation means. Right, and I'm happy to address that momentarily, but even if they... It's going so fast. I'm sorry, Your Honor. You now say that you agree that your products involve a window of time. No, this is the point I was about to make, Your Honor. Can't our media audiences, the defendant whose product is at issue here, the CPG product, do not collect data even about purchases made at a particular window of time? They don't do even that. That's your assertion. And that's in the record. But the assertion on the other side is that they've got quarterly data about purchasers in the screenshots and other places. And the problem is they have no evidence whatsoever from which a fact finder could determine that. And to put this in... Why not? Because they have an expert, a technical expert, who spent three days looking at our software, sitting with the system. He wrote a 236-page expert report. He never said, because it's not true, that KMA's system, the Kantar system, collects purchase data as construed by the court. The only thing they pointed to was these two screenshots. I disagree with you. And your own witness said repeatedly that it's on a quarterly basis. Mr. North said that what they do is that over the screenshots that they're referring to, and Mr. North said at best he could speculate about it. So there's no... Again, they bear the burden of proof. So there's no evidence beyond what Mr. North said, which is he believed that those were the quarters during which the match was made, not during which purchases were made. You didn't say he believes that it might be. It might be. And there's no... There's a difference between believe and might be. Well, the problem is for them, because bearing the burden of proof, there's no evidence that it does that. They're attempting with one speculative statement... Would you agree that it is possible, possible in this world, that with regard to user data, you could have temporal information? So with user type, absolutely. If what you're doing is you're trying to get user data, is Clevenger a heavy user, a light user, or a minor user of Dan and Yogurt? Could that assessment involve temporal information? It does. It does. Yes, Your Honor. And the reason that Kantar Media Audiences has that information is that it gets it from a vendor. So you're going too fast. So you are willing to agree that user information can include temporal information? So if I have to... It uses it, okay? Right. So if I have to... If the patent says I have to collect apple juice... You're trying to get somebody. Yes, Your Honor. In this case, and you're resisting that. I'm sorry, Your Honor. So if user information, which your current system... User type, yes. User type, it can include temporal information. Yes, it does. You're saying it doesn't? No. We agree that user type is measured over a window. All right. Is your argument that the patent requires both the use of temporal data and the collection of temporal data? The patent requires the collection of purchase data and user type. And we don't have a dispute that we collect user type. What they're doing is they're trying to put the two together. They're conflating them. They're saying user type, because of all the evidence that we... But our point is, I think, that you can't establish user type without knowing temporal data. Right. And that's not something KMA does. That's something a vendor does, and they buy that data. So you're saying the patent requires the collection? Yes. So you don't really dispute that you ultimately use some aspects of purchase data in determining user type. Purchase data is used to determine purchase type. That's not done by Kantor Media audiences. That's acquired from a vendor. Mark, can you show me in the patent where it says exactly what you just said to me? I'll try to direct you. Purchase data is used to deal with a purchase. It has nothing to do with a user. Well, so there are a couple of places. Can you, yeah, in the patent? Yeah, where does the patent say that it has to be collected? Take the 940 patent, for example, and tell me in the 940 patent where purchase type data will exclude this quarterly information. Excuse me, Eric. Right, and this was undisputed. I'm asking you to look at the patent, sir. Yes, Your Honor. Where in the patent is there a definition of purchase data that would exclude the quarterly information that you're asking for as points? So column four, lines 13 to 15 say product purchase data derived from those same households. This is in the 940 patent? 940, yes, Your Honor. Column four, line which? 12 to 15. And there's another point, which is… It says purchase can't be compared with regard to stimuli? Yes, so in other words, the idea is that the purchase data would be compared before and after the stimulus. You would know the date on which the purchase happened, and you would know the date on which the advertisement happened, and you would see if the ad worked. You can't do that unless you know whether it was before or after the ad happened. That's the key point, which is why they stipulated the purchase data has to be a particular product at a given time, and we have neither of those. I would direct Your Honor to figure 43 of the patent. Where is that? Is there any place else in the patent that you claim that that excludes the quarterlies? Yes, excluding the quarter is only part of it. It's also, there's no particular product, but as to quarter, it does exclude that. Where else in the patent is there an express exclusion of scope of quarterly temporal information from purchase data? Column 6, lines 19 to 25, which says, By matching what programming each household is viewed or tuned to on a television with products the household has purchased, the advertiser can know which advertising has worked. Again, it's this temporal concept that the ad appears on Tuesday. You now know whether somebody makes a purchase on Wednesday. You can tell whether it's worked, and again, this is why it was stipulated to. But why can't you tell whether something's worked if you know that an ad airs in a given quarter and that in a given quarter there were increased purchases of the particular product? That's just not the way that the patent describes the system working, and that's not the way the system… Again, it doesn't specify… What I'm looking for is a definition in the patent of purchase data. Right, and we don't have that, Your Honor. There's no express definition. Can you look at column 19, sir? Yes, Your Honor. Can you look down there, line 45? Purchase data, such as purchase type data. Purchase type data is when you're talking about specific stuff. Purchase information data, how about that? That's broader. Product category data, that's also purchase data. Demographics data, that's also purchase data. Other data, and many other types of data, which would suggest that it includes user data, right? No, Your Honor, because the patent actually distinguishes user type from purchase data in… User type is mentioned in all these patents, user type is mentioned twice, only twice, where it refers to heavy user, light user, medium user. Correct, Your Honor. So what I'm asking you to do, sir, is to come back to column 19 and explain to me why user data is exempt, excluded from the definition of purchase data. Well, I would come back to the stipulation. I'm asking you to do that. Yes, Your Honor, I would point to the stipulation of the parties. I don't want to talk about the stipulation. This is assumed that I'm trying to do this as a judge, trying to decide what claim construction is, and I want to know if there's a definition of purchase data in the patent that either includes or excludes user data. I don't think there's a definition that answers that question in the patent, Your Honor. I think what we're working… I pointed you to column 19, which is the closest I can find to a specific definition of purchase data. It sure looks like a definition of purchase data. Your Honor, I don't have… I don't think anything in there… I have no argument. I have no argument that that column or line indicates what the time frame is. I do have an argument that even if they were to prevail on a quarter being a given time, there also isn't a particular purchase. Again, we're dealing with a stipulated construction. This court held in digital vending services… We're trying to understand what the stipulation meant. Yes, Your Honor. And one of the things in the stipulation is it has to be a particular product, and the patent does refer to that. In the stipulation, where does it say particular product? Yes, Your Honor. The stipulation says specifically data describing the purchase of a particular product at a given time. Now, Figure 43 of the patent actually clarifies precisely this distinction. If Your Honor looks at Figure 43… Aren't the screenshots for particular products? No, Your Honor. That's exactly the point. They are not. They are for categories of products. A particular product would be, let's say, a 19.1-ounce Apple Jacks. They are for categories… Again, you're asking us to understand what you understood by the stipulation. To me, a yogurt could be a particular product. That's in Figure 43, Your Honor, which specifically shows brand as Apple Jacks, and then product, Apple Jacks 19.1-ounce. It's in there, and that's the thing. You're saying the word particular is something that you stipulated to. Now you're saying, and we should go back now and ask the Court of Appeals to construe the patent so that you can understand what we meant by the stipulation. I understand the concern, Your Honor, and I think it does, under my mail, come down to the claim construction issue. There's no dispute as to how the system works. Their expert went through it in detail. We don't collect particular data about particular products. That is defined as clearly as possible in Figure 43, which distinguishes brand from product. How is Chobani yogurt not a particular product? Because a particular product… The point of this is that you can take particular product purchase information, and you can compile it, as Your Honor mentioned earlier, into user type. We do the second. We don't do the first. We buy the user type information from a vendor who may have done that. But the argument that cancer media audience infringes would require cancer media audience to do that. That's what they don't do, and they stipulated that it has to be a particular product at a given time. I admit that there's some lack of clarity as to what that means. It ultimately, though, is under my mail as a claim construction question, and it is clear from Figure 43 that a particular product refers not just to a brand like Chobani yogurt, but to a particular, here it would say 19.1 ounce Apple Jacks. And that purchase data is not purchased by, is not gathered by KMA. That's undisputed. So there's no factual issue. Let me ask you a question about the sanctions. Yes, Your Honor. You stipulated that the narrowing was going to, if we're going to talk about stipulations, that would have no prejudice at all to your opponent from them coming in and narrowing. And then the judge issues a sanction and says, you lose your whole claim because you narrowed your claim. I mean, how is that inappropriate? So, Your Honor, from day one, Cantor was trying to determine what the purported trade secrets were. A year into the case, in June of 2012, we requested that the court compel them to disclose in response to interrogatory. And the court specifically said, I mean, there's transcripts where the court specifically said, you know what, you're going to get all that information because they're going to narrow their claim. And then she turned around and sanctioned them for doing exactly what she asked them to do. Your Honor, what they've said, and this is a little bit misleading, they said that they had narrowed their claims. And they did. They dropped the number of claims, but they kept a broad swath of documents that they were purportedly basing it on. So their trade secret claim, for example, is speed and reliability of the system. We were never able to determine what is it about the speed. And they said, well, look at our documents. So we looked. And, for example, one of them was, well, we use the Cognitio database. Well, Cantor doesn't. Cantor uses an Oracle database. So they said, well, that's not our trade secret. At each step of the way, they were never particular about what the trade secrets were. But you never moved for a more particular Rule 26e disclosure. So two things on that, Your Honor. First of all, TRA is suggesting that there's a requirement for a motion, but that's only under 37b. Well, 26e is self-executing in the sense that if you fail to disclose something, that you then can't later rely on it. This is a situation where you say they disclosed too much, and they ultimately later narrowed it. You're not saying under 26e that there was some piece of information that they didn't disclose. They failed to pinpoint what their trade secrets were. And that's precisely what you need to know in order to be able to defend against it. And the judge did warn them at a hearing that if they didn't, this was in April 2013, if they didn't pinpoint what their trade secrets were, they were going to, quote, lose quickly. Now, they're experts. And she specifically said the reason you lose quickly is that once you get to the merits, then you can't just be vague anymore. Right. So they then come in in response to summary judgment, and they're not vague anymore because she's going to get to the merits, and she says you lose because you didn't do this sooner. The problem was they still were vague because they said, well, here it is in a somewhat narrower bunch of documents, and they never specified what they were. Entirely separate from the sanction, the Court also found that the Kantar hadn't used, there was simply no evidence that Kantar had used any of these trade secrets. Kantar's system does not work the way TRA's system is. There's no allegation that it does. Their 236-page expert report doesn't say our system works the way theirs does. It's just these vague sort of hand-waving arguments that, well, speed and reliability is a trade secret. And the judge said that's not a trade secret. Well, you don't really argue that the TRA analytics wouldn't be a protectable trade secret, do you? Absolutely not. Absolutely not. They have a protectable trade secret in their software. We didn't copy it. We didn't even have access to it. The people who developed the Kantar system were not looking at their software and never saw it. That's not even alleged. The allegation is that speed, reliability, and performance is a trade secret, and the judge correctly held, and this is an abusive discretion standard, that that's simply not a trade secret under- Why would that be an abusive discretion standard? Well, I'm sorry. I conflated two things. The abusive discretion standard is the sanction. So the judge, it's an abusive discretion standard as to whether she correctly sanctioned them under Rule 37, and that is an abusive discretion standard. Quite apart from that, she also correctly ruled as a matter of law that there was insufficient evidence from which a jury could find that Kantar had ever actually used any of these trade secrets. She just asked the sum. She says the USSO. She said the trade secret doesn't qualify. Right. So under New York law- It's a mixture of grounds, alternative grounds. Correct. Shouldn't she recognize that her sanction ruling was subject to question? Well, I think the sanction, again, it was, with respect, we've been trying since the beginning of the case to determine what these trade secrets were, and they said it's in this massive document. At one point, they narrowed the massive document, and then they include, nonetheless, a reservation of right saying, well, and it could be in other documents as well, and she said that's just not enough, and there's case law in the Second Circuit that that's the case that we cited. So at the end, they not only failed to identify which documents the trade secrets were in, they failed to give us an indication of where in those documents what specific things were protectable, and in any event, quite apart from that, there was no evidence that any of those trade secrets had been used. Okay.  Thank you. Thank you, Erin. Thank you. Regarding use of the trade secrets, one quick point is that there is no dispute that Kantar actually received all of the items that TRA contends were trade secrets. These were all received under NDAs, and regarding whether TRA's expert report details use, it actually does in quite a lot of detail at A1160-67. There's a thorough discussion by Dr. Mila of the use of the trade secrets. Maybe it's partially a function of throwing too many planes at the wall here, but the response to the summary judgment was pretty short on facts as it relates to the use, and isn't that your responsibility is to respond to a well-supported summary judgment and to at least show the judge that there are meaningful facts from which you are attempting to make this argument or create a material issue of facts? Absolutely, Your Honor. You're 100% correct, and I believe that we did do that. There is direct evidence of use in the record, but it's very clear that under the law you don't need to have direct evidence of use and that the more common situation is you have circumstantial evidence of use, and there is very abundant circumstantial evidence of use in this case, including Mr. Salama saying that it would take them two years to replicate TRA's capabilities, and they were able to come out with a product in a substantially shorter amount of time. There is also abundant evidence that TRA's trade secrets actually were disseminated widely within TNS to people who were not supposed to receive the information, and there is evidence that they understood they weren't supposed to receive the information. What about the argument that the patent requires not just the use of purchase data, but the actual collection of all the purchase data, which would include data that would reflect the timeframe in which it was purchased? Right. So regardless of the timeframe we're talking about, even if it's a bigger timeframe, if there's no collection of it, is there infringement? I don't think that was the basis for them moving for summary judgment on the collection point. What they said was their product doesn't disclose anything at all about the time, and so it has been a moving target where they've now said, well, what about a particular product? They say that they don't have any data about a particular product, and as Your Honor pointed out, they do have very specific products that they talk about, a particular brand of yogurt, for example. So it's a little bit harrowing, frankly, to be defending against a summary judgment motion that keeps shifting and moving all around, and the positions keep changing, and all of the ambiguities are supposed to be resolved in our favor. It's hard to imagine what TRA could have done better, frankly, in terms of protecting its proprietary information. Mark Lieberman, who started TRA, he and his co-founders came up with an incredible, incredible advance, what's been called the holy grail in this industry, and Kantor itself acknowledged that TRA succeeded where every other company in the industry had failed for three decades, and they sought patent protection. They protected their information with NDAs and kept the trade secret. They have contracts. They disclosed information to their board members under fiduciary duty law, and every one of those things was violated, and the court has said that there's not even a disputed issue, that the court can rule in favor of Kantor on every single thing on summary judgment, and with respect to the district court, the district court was acting as if this were a bench trial as opposed to summary judgment, and that's precisely what the Supreme Court, just this past year, reiterated cannot be done. Thank you. Thank you. Thank you both. The case is taken under submission.